UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| H.S., an individual, | : |
| Plaintiff, | : Case No. 2:22-cv-3778 |
| v. | : Judge Algenon L. Marbley |
| RED ROOF INNS, INC., et al. | : Magistrate Judge Elizabeth P. Deavers |
| Defendants. | : |

## OPINION & ORDER

This matter comes before this Court on Plaintiff H.S.'s Motion to Strike Two Claims in the Third-Party Complaint and to Sever and Stay the State Law Claims ("Motion") (ECF No. 70). For the reasons set forth below, this Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion to Strike (ECF No. 70).

## I. BACKGROUND

This case arises under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a). Plaintiff H.S. alleges that, from approximately 2013 to 2014, she was trafficked for sex at Red Roof Inn in Memphis, TN ("Memphis RRI"). In October 2022, she sued Defendants Red Roof Inns, Inc. and Red Roof Franchising, LLC (collectively, "RRI Defendants") under the TVPRA,[1] alleging that RRI Defendants "knowingly benefitted from participation in a

---

[1] 18 U.S.C. § 1595(a) provides:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

1

venture that [they] knew or should have known to be engaging in violations of 18 U.S.C. § 1591(a)." (ECF No. 1 ¶ 19). Specifically, Plaintiff alleges that, at Memphis RRI, she was "raped, continuously abused physically and verbally, malnourished, psychologically tormented, kidnapped, and imprisoned." (*Id.* ¶ 46). She further claims that a "Red Roof employee . . . solicited H.S. for commercial sex acts from her trafficker." (*Id.* ¶ 50). According to Plaintiff, her trafficker would beat her in the Memphis RRI parking lot "as she screamed for help to no avail by the Memphis RRI," recalling that this "violence and beating also occurred regularly in the rooms and in public areas of the hotel, frequently enough that loud sounds of abuse, yelling, and screams for help would have been obvious to the hotel staff and other guests." (*Id.* ¶ 51). She points to "several consistent red flags" that were "open and obvious to anyone working at the Memphis RRI by Red Roof," including "[p]aying for stays in cash; [p]aying for extended stays on a day-by-day basis; [r]equesting a room away from other guests; [o]bvious signs of illegal drug use; [f]requent requests for linen changes; [u]nusually large number of used condoms in the trash; [u]nusually large number of male visitors asking for H.S. and her traffickers at the front desk; [v]isible signs of prior and private physical abuse; [u]nusually large number of male visitors coming in and out of the room; [a]sking the front desk not to be disturbed; [w]omen wearing clothing inappropriate for the weather; [l]oud noises of abuse or other emergency audible to staff or other rooms; and [l]oitering and soliciting on hotel grounds." (*Id.* ¶¶ 55, 57).

On March 29, 2024, this Court denied RRI Defendants' motion to dismiss. (ECF No. 51). On May 2, 2024, pursuant to Federal Rule of Civil Procedure 14(a)(1), RRI Defendants filed a Third-Party Complaint against Shree Shiv, LLC ("SSL" or "Franchisee"), seeking indemnification from SSL pursuant to a 2012 Franchise Agreement, under which SSL agreed "to own, operate, and maintain RRI Memphis as an independent franchisee." (ECF No. 61 ¶ 18 (citing ECF No. 61-

2

1)). According to RRI Defendants, under the Franchise Agreement, "SSL agreed, as an independent contractor, that it had 'sole responsibility to maintain safety and security of its employees, guests and others who may be on the Inn premises.'" (*Id.* ¶ 20 (quoting ECF No. 61-1 § 5.12.1)). SSL further "expressly agreed to defend and indemnify Red Roof for damages arising out of the Franchisee's conduct in Section 15.2 of the Franchise Agreement, which states: '[t]he Franchisee shall indemnify, protect, defend, release and hold harmless Franchisor [and its Affiliates, including Red Roof Inns, Inc.] from and against any and all payments of money (including, without limitation, all liabilities.).'" (ECF No. 61 ¶ 21 (quoting ECF No. 61-1 § 15.2.2)). The Third-Party Complaint asserts four claims: (1) contractual indemnification and defense; (2) common law indemnification; (3) contribution; and (4) breach of contract. (*Id.*)

On May 30, 2024, Plaintiff moved to strike the second and third claims (common law indemnification and contribution), and to sever and stay the first and fourth claims (contractual indemnification and breach-of-contract). (ECF No. 70). RRI Defendants opposed (ECF No. 72), and Plaintiff replied (ECF No. 75). This matter is now ripe for resolution.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 14, which governs third-party practice, provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). This allows "additional parties whose rights may be affected by the decision in the original action to be joined so as to expedite the final determination of the rights and liabilities of all the interested parties in one suit." *American Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir.2008). The purpose of Rule 14 is "to promote economy by avoiding the situation where a defendant has been adjudicated liable and then must bring a totally new action against a third party

3

who may be liable to him for all or part of the original plaintiff's claim against him." *Id*. (citing Wright, Miller, Kane, Fed. Prac. & Proc.: Civ.2d § 1441 at 289–90 (2d ed. 1990)). "The third-party complaint is in the nature of an indemnity or contribution claim." *Id*.

Under Rule 14(a)(4), "[a]ny party may move to strike the third-party claim, to sever it, or to try it separately." Fed. R. Civ. P. 14(a)(4). With Rule 14's purpose of encouraging judicial economy in mind, district courts enjoy "considerable discretion . . . in deciding whether to permit or strike a third-party complaint." *Old Republic Ins. Co. v. Concast, Inc.*, 99 F.R.D. 566, 568 (S.D.N.Y. 1983); *accord*, *Fed. Home Loan Mortg. Corp. v. Kantz*, No. 3:15-CV-00932, 2018 WL 1535465, at *3 (M.D. Tenn. Mar. 29, 2018), *report and recommendation adopted*, No. 3:15-CV-00932, 2018 WL 1881254 (M.D. Tenn. Apr. 19, 2018).

### III. LAW & ANALYSIS

*A. Common Law Contribution and Indemnification Claims (Counts II & III)*

The Third-Party Complaint relies on the theory that if RRI Defendants are held liable to Plaintiff in violation of 18 U.S.C § 1595(a), SSL is at least partially responsible, and thus is liable to RRI Defendants for all or some of the damages Plaintiff seeks. In her Motion to Strike, Plaintiff argues that the common law indemnification and contribution claims must be stricken based on this Court's rulings in *A.W. v. Best W. Int'l, Inc.*, No. 2:21-CV-4934, 2024 WL 1340264 (S.D. Ohio Mar. 29, 2024) and *T.P. v. Best W. Int'l, Inc.*, No. 2:21-CV-4933, 2024 WL 1347451 (S.D. Ohio Mar. 29, 2024). In *A.W.* and *T.P.*, this Court held that hotel defendants were not entitled to bring contribution or indemnification claims against a franchisee under the TVPRA, noting that: (1) the statute does not expressly provide a cause of action for contribution or indemnification; (2) hotel chains are not among those the TVPRA seeks to benefit; and (3) "Congress has amended the statute at least seven times and repeatedly declined to include an explicit right to contribution or

4

indemnification." *See A.W.*, 2024 WL 1340264, at *2; *T.P.*, 2024 WL 1347451, at *2. This Court further opined that "[c]laims for common law indemnification . . . are, in effect, claims for contribution." *A.W.*, 2024 WL 1340264, at *2; *T.P.*, 2024 WL 1347451, at *2. As such, and because "contribution does not implicate 'uniquely federal interests,'" this Court rejected hotel defendants' attempts to seek contribution or indemnification under federal common law. *A.W.*, 2024 WL 1340264, at *2 (quoting *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641-42 (1981)); *T.P.*, 2024 WL 1347451, at *2 (same).

Plaintiff urges this Court to follow *A.W.* and *T.P.*, and strike the third-party claims for contribution and common law indemnification. RRI Defendants oppose, arguing that Plaintiff's argument is "premature" and that RRI Defendants' "rights and obligations are governed by Ohio law." (*See* ECF No. 72, at 2–3 (citing Ohio Rev. Code § 2307.25(a)). RRI Defendants, however, provide no reason why this case differs from *A.W.* and *T.P.* so as to warrant departure from those rulings. Because this Court's reasoning in *A.W.* and *T.P.* is applicable here, Plaintiff's motion to strike RRI Defendants' third-party claims for common law indemnification (Count II) and contribution (Count III) is **GRANTED**.

    B. *Contractual Indemnification and Breach-of-Contract Claims (Counts I & IV)*

As to the third-party claims for contractual indemnification (Count I) and breach of contract (Count IV), Plaintiff argues that the claims should be stayed and severed at this juncture or, alternatively, after discovery. (ECF No. 70, at 5–12). As noted above, under Rule 14(a), a court may sever a third-party claim. Fed. R. Civ. P. 14(a). Under Rule 42(b), a court has discretion to bifurcate trials "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed. R. Civ. P. 42(b).

5

When determining whether to sever claims, courts consider a number of factors including: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for separate claims. *See Parchman v. SLM Corp.*, 896 F.3d 728, 733 (6th Cir. 2018) (considering severance under Fed. R. Civ. P. 21).

In *A.W.* and *T.P.*, this Court declined to sever and stay the third-party claims, noting that "these considerations are best left until raised by the parties after discovery can delineate where facts are intertwined or overlap." *A.W.*, 2024 WL 1340264, at *5 (quoting *A.B. v. Marriott Int'l, Inc.*, 2020 WL 3642485, at *5 (E.D. Pa. July 6, 2020)); *T.P.*, 2024 WL 1347451, at *5 (same). Plaintiff urges this Court to deviate from that approach and sever the claims now, arguing that the dispute resolution provision in RRI Defendants' franchise agreement with SSL distinguishes this case from *A.W.* and *T.P.* That provision provides:

> **17.6. Dispute Resolution**: Franchisor has established a policy for franchisee to air and resolve grievances, issues and disputes internally. If the parties are unable to resolve such disputes through this policy, the parties agree to submit any claim, controversy or dispute arising out of or relating to this franchise agreement (including the Attachments Exhibits Schedules and Addendum hereto) or the relationship created by this franchise agreement (with the exception of those disputes concerning failure to commence or complete construction or renovation, failure to commence operations, insurance, insurance requirements, monetary obligations, indemnification, quality inspection ratings, the Inn has ceased operations, unauthorized use of trademarks, failure to de-identify to non-binding mediation before bringing such claim, controversy or dispute in a court or before any other tribunal the parties shall select the mediator within thirty (30) days of the request of mediation by either party.

(ECF No. 61-1). According to Plaintiff, if RRI Defendants are found liable, RRI Defendants and SSL "can [] proceed to mediation and may never need to or be permitted to litigate before this

6

Court." (ECF No. 70 at 8). She further maintains that resolution of the third-party contractual claims will, at the very least, call for contract interpretation and that she will be prejudiced if this Court declines to sever the third-party dispute, given "the undue complication of the question of allocation of responsibility and its issues of statutory interpretation, contract interpretation, public policy and novel issues of law . . . ." (*Id.* at 12). Plaintiff thus urges that "the first order of business" should be "a determination of whether [RRI Defendants] [are] liable to H.S.," and, only after liability is found, should this Court proceed to determine whether RRI Defendants are entitled to contractual indemnification. (*Id.* at 11).

RRI Defendants reject Plaintiff's reading of the dispute resolution provision, emphasizing that the clause carves out an exception for "disputes concerning . . . indemnification." (ECF No. 72, at 5 (quoting ECF No. 61-1)).  As such, they contend that the contractual indemnity claims against SSL fall outside the scope of the dispute resolution agreement. (*Id.*). Regardless, RRI Defendants note that this Court, in denying the motion to dismiss Plaintiff's claims, "has allowed Plaintiff to pursue indirect liability claims based on the franchisee"—claims that "require showing that franchisee owners or employees knew or should have known of her alleged trafficking." (*Id.* at 4 (citing ECF No. 51, 15–21)). Because "[t]hese facts and issues also concern the RRI Defendants' claims against SSL for indemnification, RRI Defendants see "no need to sever or stay the third-party suit given how much the facts, parties, and evidence of the main case and the third-party action overlap." (*Id.*).

Consistent with *A.W.* and *T.P.*, this Court concludes that severance is not warranted at this juncture. First, while discovery may ultimately lead to a different conclusion, there appears to be sufficient overlap to allow RRI Defendants' third-party claims to proceed alongside Plaintiff's claims. At its core, Plaintiff's lawsuit is about holding RRI Defendants responsible for the damages

7

that Plaintiff endured when she was sex trafficked at RRI Memphis. The crux of Plaintiff's liability theory is supported, in part, by allegations that RRI Defendants hired employees that leased rooms to traffickers, when they knew, or should have known, that they were using their hotel rooms to violate the TVPRA and consistently ignored obvious red flags. RRI Defendants, in turn, blame SSL who, under the Franchise Agreement, "agreed, as an independent contractor, that it had 'sole responsibility to maintain safety and security of its employees, guests and others who may be on the Inn premises.'" (ECF No. 61 ¶ 20 (quoting ECF No. 61-1 at 11 § 5.12.1)). Because the allegations and circumstances surrounding the events at RRI Memphis may be relevant to both the primary and third-party action, severing or staying the RRI Defendants' claims is unnecessary at this time.

Accordingly, Plaintiff's motion to sever and stay RRI Defendants' state law claims (Counts I & IV) is **DENIED WITHOUT PREJUDICE.**

### III. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Strike (ECF No. 70) is **GRANTED IN PART** and **DENIED IN PART**: Plaintiff's motion to strike RRI Defendants' third-party claims for common law indemnification (Count II) and contribution (Count III) is **GRANTED**, and Plaintiff's motion to sever and stay the remaining third-party claims is **DENIED WITHOUT PREJUDICE**.

IT IS SO ORDERED.

ALGENON L. MARBLEY
UNITED STATES DISTRICT JUDGE

**DATED: January 2, 2025**

8